UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA

v.

SHOLAM WEISS,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER**

21-CR-00457 (PMH)

PHILIP M. HALPERN, United States District Judge:

Sholam Weiss ("Defendant") was found guilty and sentenced, on February 15, 2000, to 845 years in prison—followed by three years of supervised release—for his role in a scheme to defraud an insurance company.[1] (Doc. 4, "Def. Br." at 1, 4 n.3). Defendant's prison sentence was commuted on January 20, 2021, and jurisdiction over his supervised release, which lasts until January 20, 2024, was transferred to this Court on July 14, 2021. (Def. Br. at 1; Docs. 1-2). Defendant, on January 31, 2022, moved under 18 U.S.C. § 3583(e)(1) for early termination of his term of supervised release. (*See* Def. Br.). The Government opposed Defendant's motion on March 16, 2022, (Doc. 9, "Opp. Br."), and the motion was fully submitted with the filing of Defendant's reply on April 28, 2022 (Doc. 17, "Reply").

For the reasons stated herein, Defendant's motion is DENIED.

## BACKGROUND

Defendant was found guilty on all ninety-three counts with which he was charged, each "relat[ing] to a fraudulent scheme that he and others perpetrated, which caused the bankruptcy of National Heritage Life Insurance Company" and necessitated a payout of over $426 million in claims. (Opp. Br., Ex. B at 2). Defendant fled the country while the jury was deliberating in his

---

[1] Defendant's prison term was later reduced to 835 years. (Def. Br. at 1).

trial and "was eventually located and arrested in Austria, and, after a legal battle, extradited to the United States." (Opp. Br. at 2). Defendant did not begin serving his prison term until June 2002. *Id.* Then-President Donald J. Trump commuted Defendant's sentence of incarceration on January 19, 2021, and Defendant was released from prison the following day. (Def. Br. at 1). The commutation did not, however, relieve Defendant's supervised release, fine, or forfeiture obligations. (Opp. Br. at 5).

Defendant states that he was on good behavior during his eighteen years in prison and that he has been fully compliant with the terms of his supervised release. (Def. Br. at 1-2). The Government does not contest this argument. (*See generally*, Opp. Br.). Defendant, according to his Rabbi, Yechaskel Weisner, has become "an integral part of [his] community" since his release. (Def. Br., Ex. 1 at 1). Defendant is 68 years old and suffers from various medical conditions, including a history of colon cancer and a stroke. (*See* Doc. 4, Exs. 2-3). The Government notes, however, that Defendant "has made no effort to satisfy the financial aspects of his sentence" because he has paid less than $3,000 toward his $123,000,000 fine and has not paid any portion of his restitution, which was recovered from sources other than his own assets. (Opp. Br. at 4-5).[2]

The Government also advises that Defendant's probation officer believes that Defendant's "term of supervised release should not be terminated early." (Opp. Br. at 5). Moreover, Defendant's probation officer told him that, while it is his right to request early termination after one year, "early terminations are discussed with the probationer at the half-way mark of their supervision term." (Def. Br. at 3). The half-way mark of Defendant's supervised release occurred on July 20, 2022, and thus the probation officer should, "under the ordinary rules of her office . . .

---

[2] Although the Government refers to a "1.23 million" dollar fine, the fine imposed actually exceeded $123 million according to Defendant's pre-sentence report. (*See also* Def. Br. at 4 n.3). The Court, therefore, infers that the decimal place inserted in the Government's brief was a typo.

[be] undergo[ing] the process of determining whether [Defendant] meets the criteria for an early release." (Reply at 10). In December 2019, Defendant moved for a reduction in his sentence. (Opp. Br. at 2). Defendant made his application to the District Court in the Middle District of Florida and Judge Mendoza ruled on his motion on July 24, 2020. (*Id.*). Judge Mendoza, in connection with that ruling, considered the sentencing factors set forth in 18 U.S.C. § 3553(a) ("§ 3553(a)"). (*Id.*).

## STANDARD OF REVIEW

18 U.S.C. § 3583(e)(2)[3] provides, in relevant part, that the Court may "terminate a term of supervised release . . . at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." Courts take into account the sentencing factors set forth in § 3553(a) when deciding a motion made under 18 U.S.C. §3583(e)(2).[4] *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). Courts also must "consider general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency." *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997). "The decision whether to grant early termination rests within the discretion of the district

---

[3] Under Federal Rule of Criminal Procedure 32.1(c)(1)-(2), a hearing is required "[b]efore modifying the conditions of probation or supervised release" unless "the relief sought is favorable to the person and does not extend the term of probation or of supervised release; and . . . an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so." A hearing is not required here because the Court is denying the motion and, therefore, leaving the existing conditions of supervised release in place.

[4] Section 3553(a) directs courts to consider, among other factors:

> (a)(1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (a)(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public, and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a); *see also United States v. Pitman*, No. 18-CR-00016, 2022 WL 2328868, at *1 (E.D. Tex. June 28, 2022).

court." *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010) (citing *Lussier*, 104 F.3d at 36). "Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation." *United States v. Aldeen*, 792 F.3d 247, 253 (2d Cir. 2015); *see also United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

The Second Circuit, in *Lussier*, observed that "[o]ccasionally, changed circumstances-for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release" may justify modification of the terms of supervised release. 104 F.3d at 35. Other courts in this Circuit have declined to grant motions for termination of supervised release where defendants "ha[ve] done nothing more than what is expected of all criminal defendants." *United States v. Liriano*, No. 91-CR-00908, 2010 WL 532517, at *1 (S.D.N.Y. Feb. 11, 2010); *see also United States v. Berrios*, No. 95-CR-00084, 2010 WL 1010022, at *2 (S.D.N.Y. March 16, 2010) (denying early termination of supervised release because defendant's good conduct was not "exceptional" or "new or unforeseen"); *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (explaining that if an "unblemished" record post-incarceration alone was enough to justify early release, "the exception would swallow the rule"). The Second Circuit has also clarified that "[s]o long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. §3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *Parisi*, 821 F.3d at 347. The burden of proof for establishing entitlement to early termination of supervised release lies with the defendant because "[e]arly termination is not warranted as a matter of course." *United States v. Shellef*, No. 03-CR-00723, 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (Bianco, J.) (internal quotation removed); *see also Pitman*, 2022 WL

4

2328868, at *1 n.1 ("[T]he defendant bears the burden of demonstrating that early termination is warranted.").

## ANALYSIS

Neither Defendant nor the Government direct their arguments in briefing toward specific § 3553(a) factors. Defendant, however, makes four arguments relevant to the Court's consideration thereof: (i) that the offense for which he was originally convicted was not as serious as the Government claims; (ii) that he has exhibited good conduct throughout his sentence and has reintegrated into his community; (iii) that he does not pose any risk to the public or to committing additional crimes; and (iv) that he suffers from serious medical ailments.

The Court addresses each of these arguments *seriatim*.

I.      3553(a)(1): The Nature and Circumstances of the Offense

Section 3553(a)(1), in part, directs courts to consider "the nature and circumstances of the offense." Defendant argues as to this factor that "[t]he nature of this case has been clouded by hyperbole since the very beginning," but that he "takes full responsibility for his crimes and does not want to minimize their severity." (Reply at 3, 6). Defendant claims that his role in the insurance fraud for which he was convicted was limited to money laundering, rather than stealing. (*Id.* at 5).

Defendant, in December 2019, previously moved in the Middle District of Florida for compassionate release. (Opp. Br., Ex. B). District Judge Mendoza, in adjudicating that motion in July 2020, considered the same § 3553(a) factors that the Court must weigh here. The Court concurs with Judge Mendoza's findings: "Defendant was a major component of what, at the time of his trial, was the largest insurance fraud in United State history—netting over 400 million dollars"; that Defendant had previously been convicted in another fraud charge; and that Defendant fled the country rather than face a jury verdict for his crimes. (*Id.* at 13). Judge Mendoza observed

further that Defendant has a "penchant towards dishonesty and fraudulent behavior." (*Id.*). The Court agrees with Judge Mendoza's thorough analysis and conclusions regarding the nature and circumstances of the offense. Defendant's offense was incredibly serious and, thus, the nature and circumstances do not warrant early termination of supervised release. Additionally, Defendant points to nothing since July 2020 that would change Judge Mendoza's analysis, which the Court hereby adopts *in toto*.

      II.      <u>3553(a)(1): History and Characteristics of the Defendant</u>

Section 3553(a)(1) also directs courts to consider "the history and characteristics of the defendant." Defendant's argument as to this factor is that he has "exhibited exemplary conduct and worked tirelessly to improve himself and to be productive should he ever be released," and that he "has fully integrated into society without any hint of dangerous behavior." (Def. Br. at 2; Reply at 10).

The Government counters that such good behavior, without more, does not justify early termination. (Def. Br. at 3 (quoting *Lussier*, 104 F.3d at 36)). Defendant attempts to rebut that argument by challenging the force of *Lussier*, reasoning that the Government's interpretation of the Second Circuit's statement in that case has since been "rejected." (Reply at 1 (quoting *Lussier*, 104 F.3d at 36)). *Lussier*, however, has not been "rejected."

The Second Circuit in *Parisi* clarified that "the plain language of *Lussier* . . . does not *require* new or changed circumstances relating to the defendant in order to modify conditions of release, but simply recognizes that changed circumstances may in some instances justify a modification." *Parisi*, 821 F.3d at 347 (emphasis in original). The *Parisi* Court also noted that "[s]o long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of

new or changed circumstances with respect to the defendant." (*Id.*). Thus, while changed circumstances are not *required* in order to terminate supervised release, the lack thereof may be relevant to the requisite § 3553(a) analysis. "[F]ull compliance with the terms of supervised release, without more, *generally* does not warrant early termination . . . [because] if every defendant who complied with the terms of a supervised release were entitled to early termination, the exception would swallow the rule." *United States v. Kassim*, No. 15-CR-00554, 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (internal quotation and citations removed, emphasis added). Defendant's good behavior and re-integration, although laudable, were fully expected of him and therefore do not warrant early termination of supervised release.[5]

### III.   3353(a)(2)(C): Risk to the Public

Section 3553(1)(2)(C) directs courts to consider "the need for the sentence imposed to protect the public." Defendant argues that he poses no risk to society if his supervised release were terminated because he "has no history of violence, no recent convictions, no history of drug or alcohol use, [and] no psychiatric episodes." (Def. Br. at 4). Defendant also argues that "the chances of recidivism significantly diminish with age." (*Id.* at 5).

The Court again agrees with Judge Mendoza's analysis of this factor. Judge Mendoza found that "while Defendant may have some health concerns, his penchant towards dishonesty and fraudulent behavior could cause harm to the community even considering [his] age and health." (Opp. Br., Ex. B at 13). Judge Mendoza also concluded that "Defendant is certainly still capable of committing fraud and harming the community." (*Id.*).

---

[5] The Government also argues, potentially relevant to this factor, that Defendant has only paid approximately $3,000 toward his $123,000,000 fine. (Opp. Br. at 4-5). Although not dispositive, such a meager attempt to comply with the Court's Order does not help this application.

The Court agrees with this reasoning and finds that Defendant has not met his burden on this factor. Defendant remains perfectly capable—at the young age of 68—of recidivating and thus harming the public. Defendant's medical issues, discussed *infra*, do not alter this calculus. *See e.g., United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) ("The facts here stand in stark contrast to cases in which a defendant is terminally ill, incapacitated, and therefore no longer able to inflict further harm on the community."). Here too, the Defendant has not pointed to any additional facts or considerations since July 2020 that would cause a different analysis here. Accordingly, the Court's findings as to the need to protect the public weigh against early termination of supervised release.

IV.     3553(a)(2)(D): Defendant's Medical Care

Section 3553(1)(2)(D) directs courts to consider "the need for the sentence imposed to *provide the defendant with needed* educational or vocational training, *medical care*, or other correctional treatment in the most effective manner." (emphasis added). Defendant's argument as to this factor is that he "was diagnosed with and treated for numerous serious ailments during his incarceration[,] . . . suffers from serious chronic health conditions," and is recovering from a stroke. (Def. Br. at 2). Defendant has not established that his medical care is, in any way, impaired by his supervised release. That he has medical issues does not mean that his sentence, as currently imposed, has any effect on those issues. Accordingly, the Court's finding as to the need to provide Defendant with needed medical care in the most effective manner does not counsel in favor of early termination of supervised release.

V.      Probation Officer Approval

Although consideration of a probation officer's recommendation is not an enumerated factor of § 3553(a), such a recommendation can be considered by the Court based on the officer's

8

familiarity with the given defendant. In this case, Defendant's probation officer opposes termination of supervised release. (Opp. Br. at 5). The Court notes that of the cases cited by the parties in their briefing, with the exception of *United States v. Witcher*, No. 17-CR-00569, 2021 U.S. Dist. LEXIS 70299 (S.D.N.Y. Apr. 12, 2021) and *United States v. Erskine*, 05-CR-01234, 2021 WL 861270 (S.D.N.Y. Mar. 8, 2021), none granted early termination of supervised release without the express approval of the defendant's probation officer. Moreover, the Court's independent research reveals that there is no case in this Circuit in which early termination was granted where the probation officer opposed it outright. However, the halfway point of Defendant's supervised release occurred on July 20, 2022 and thus, the probation office should now be evaluating his supervised release and making a recommendation as to early termination. (Reply at 10). Should the Defendant determine to file a new motion for early termination, the Court will certainly take the probation officer's recommendation into account in considering any supplemental motion for early termination of supervised release.

## CONCLUSION

For the foregoing reasons, Defendant's motion for early termination of supervised release is DENIED.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 4.

SO ORDERED:

Dated: White Plains, New York
      August 9, 2022

_____
Philip M. Halpern
United States District Judge

9